UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

04 11650 PBS

HEARTS ON FIRE COMPANY, LLC,

    Plaintiff,

v.

GOLDENMINE.COM, INC.,

    Defendant.

CIVIL ACTION NO. _____

Jury Trial Demanded

RECEIPT # _____
AMOUNT $150
SUMMONS ISSUED Yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. FOM
DATE 7/26/04

MAGISTRATE JUDGE Bowler

## COMPLAINT

Plaintiff Hearts On Fire Company, LLC ("HOF"), by its undersigned attorneys, sets forth its Complaint against Defendant GoldenMine.com, Inc. ("GoldenMine") as follows:

### PARTIES

1. HOF is a Massachusetts Limited Liability Company with a principal place of business at 99 Summer Street, Boston, Massachusetts 02210. HOF manufactures and distributes gemstones (specifically, cut diamonds) and jewelry to authorized retailers and provides services relating to the sale of jewelry to retailers and the public.

2. On information and belief, GoldenMine is a California corporation with a principal place of business at 606 S. Hill Street, Suite 210, Los Angeles, California 90014. On information and belief, GoldenMine sells jewelry, including diamond jewelry, over the Internet and promotes itself as "the largest gold jewelry e-tailer on the net."

## JURISDICTION AND VENUE

3.     Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338(a), which confer original jurisdiction upon this Court for civil actions arising under the laws of the United States and any act of Congress relating to trademarks, respectively. In addition, supplemental jurisdiction over related state law claims is conferred upon this Court by 28 U.S.C. § 1367(a).

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because GoldenMine "resides" in this judicial district within the meaning of 28 U.S.C. § 1391(c) insofar as GoldenMine is subject to personal jurisdiction in this district. Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property that is the subject of this action is situated, within this district.

5.     This court has personal jurisdiction over GoldenMine pursuant to Mass. Gen. Laws ch. 223A, §§ 3(a), (b), (c), and (d) because this action arises: (a) from GoldenMine's transaction of business in Massachusetts; (b) from GoldenMine's conduct with respect to contracting to supply things in Massachusetts, among other places; (c) from GoldenMine's causing tortious injury in Massachusetts by acts or omissions within Massachusetts; and/or (d) from GoldenMine's causing tortious injury in Massachusetts by acts or omissions outside of Massachusetts while regularly doing or soliciting business, or engaging in a persistent course of conduct, or deriving substantial revenue from goods used or consumed in Massachusetts.

6.     The particular conduct triggering such jurisdiction includes, among other things,

GoldenMine's intentional use of HOF's trademarks and of confusingly similar designation to promote the sale of competing goods by means of a highly interactive web site through which GoldenMine conducts business on the Internet.

7. Through such conduct, GoldenMine has purposefully availed itself of the privileges of conducting business in the Commonwealth of Massachusetts, and it is reasonably foreseeable that GoldenMine would be subjected to this Court's jurisdiction.

## FACTUAL BACKGROUND

8. HOF was originally founded in 1978 as Di-Star, Ltd. HOF adopted its present name in 1996, when it commenced using the Hearts On Fire® mark in connection with the sale and advertising of diamonds and jewelry.

9. HOF is a leader in the distribution of branded diamonds – i.e., diamonds that are identified by source-designating trademarks, which are extensively promoted.

10. HOF's diamonds are known for their consistent high quality cut, as well as for their color and clarity.

11. HOF sells to authorized retailers at numerous retail locations throughout the United States.

12. HOF also promotes its diamonds and jewelry through a web site located at www.heartsonfire.com.

13. Since 1996, HOF has used the Hearts On Fire® mark in connection with the sale, distribution, and advertising of all of its diamonds and jewelry.

14. The Hearts On Fire® mark is registered with the United States Patent and Trademark Office ("USPTO") for "gemstones, namely, cut diamonds" in Class 14 with a first use in commerce in November of 1996. Attached as Exhibit A is a true and accurate copy of

Registration No. 2,119,886 issued by the USPTO for such registration. The Hearts On Fire® mark is also registered with the USPTO for "jewelry" in Class 14 with a first use in commerce in 1997. Attached as Exhibit B is a true and accurate copy of Registration No. 2,686,511 issued by the USPTO for such registration.

15. Since 2001, HOF has used the Dream® mark (for "jewelry") in connection with the sale, distribution, and advertising of all of its diamonds and jewelry. The Dream® mark is distinctive of HOF as the source of its goods and services.

16. The Dream® mark is registered with the USPTO for use in connection with "jewelry" with a first use in commerce in May of 2001. Attached as Exhibit C is a true and accurate copy of Registration No. 2,726,434 issued by the USPTO for such registration.

17. In addition to its registered mark for Dream® (for "jewelry"), HOF has used the mark Dream™ (for "gemstones") in connection with the distribution and sale of gemstones (namely, cut diamonds) since at least as early as May 2001. The Dream™ mark is distinctive of HOF as the source of its goods and services.

18. Since 2003, HOF has used the Dream Cut® mark in connection with the sale, distribution, and advertising of all of its diamonds and jewelry. The Dream Cut® mark is distinctive of HOF as the source of its goods and services.

19. The Dream Cut® mark is registered with the USPTO for use in connection with "jewelry; namely diamonds" with a first use in commerce in March 1991. Such mark was assigned to HOF in January of 2003. Attached as Exhibit D is a true and accurate copy of Registration No. 1,732,072 issued by the USPTO for such registration.

20. Since 2001, HOF has used the Dream By Hearts On Fire® mark in connection with the sale, distribution, and advertising of all of its diamonds and jewelry. The Dream By

Hearts On Fire® mark is distinctive of HOF as the source of its goods and services.

21. The Dream By Hearts On Fire® mark is registered with the USPTO for use in connection with "jewelry" with a first use in commerce in May of 2001. Attached as Exhibit E is a true and accurate copy of Registration No. 2,786,391 issued by the USPTO for such registration.

22. Through extensive and continuous sales, promotion, and use, all of the marks described in paragraphs 13-21 have come to be associated with HOF and identify HOF as the source of the goods and services offered in connection with these marks.

23. On information and belief, GoldenMine is a retailer of jewelry containing diamonds.

24. On information and belief, GoldenMine sells its jewelry containing diamonds to consumers and promotes its products by means of a web site accessible through the universal resource locater www.goldenmine.com.

25. GoldenMine has repeatedly made unauthorized use of HOF's trademarks in a series of blatant attempts to trade off HOF's good will.

26. In or about late April of 2004, HOF learned that GoldenMine was publishing a page on its web site containing the caption "Hearts on Fire Diamonds" and stating "Check our Hearts on Fire's 'Dream diamond'." Attached as Exhibit F is a true and accurate copy of such web page.

27. In fact, GoldenMine does not sell and has not sold genuine Hearts On Fire® diamonds, including genuine Dream® diamonds. This page also contained the words "heartsonfire" in the page's metatags, which are hidden code used to cause a web page to appear in response to searches for particular words on Internet search engines.

28. On or about April 29, 2004, HOF sent a letter to GoldenMine notifying GoldenMine of its violations of HOF's trademark rights and warning GoldenMine to cease its illegal conduct. A true and accurate copy of the April 29 letter is attached as Exhibit G.

29. In response to the April 29 letter, on or about May 3, 2004, David Lee, a "Manager" for GoldenMine wrote to HOF and stated that "we now recognize that we unknowingly made false claims" and claimed to have "rectified the misappropriation immediately and have removed all trademarks associated with HOF on our website." Attached as Exhibit H is a true and accurate copy of the May 3 letter from Mr. Lee. Attached as Exhibit I is a true and accurate copy of a letter dated May 17, 2004 from HOF's in-house counsel to Mr. Lee confirming that GoldenMine would cease and desist from its infringing practices.

30. Nevertheless, GoldenMine found new ways to violate HOF's trademark rights. Specifically, in or about July of 2004, HOF learned that GoldenMine was publishing a page on its web site at diamonds.goldenmine.com/hearssoulsonfire.htm. The title of this page stated "Find Beautiful Diamond Jewelry to Set your hearts and souls on fire!" and the text of the page stated "There are many brilliantly cut diamonds providing so much beauty that they literally light your hearts and souls on fire!" Attached as Exhibit J is a true and accurate copy of the foregoing web page.

31. Near the top of this page was a link with the words "Hearts On Fire Diamonds." This link took users to a web page available at www.bridaltips.com/diamond.htm. The linked page contained information under the caption "Hearts Of Fire Diamonds" next to "Hearts On Fire Diamonds." Beneath this caption was the materially false representation that the Hearts On Fire® trademark merely signifies an "ideal cut diamond." Attached as Exhibit K is a true and accurate copy of the foregoing web page.

32. On or about June 15, 2004 counsel for HOF sent a letter to GoldenMine complaining of these additional violations. A true and accurate copy of the June 15 letter is attached as Exhibit L.

33. On or about June 17, 2004, Brian Ree, a "Manager" of GoldenMine, sent a letter to counsel for HOF claiming that GoldenMine had again discontinued its violations of HOF's trademark rights. Attached as Exhibit M is a true and accurate copy of Mr. Ree's June 17 letter.

34. Nevertheless, in or about the middle of July of 2004, HOF again learned that GoldenMine had found yet further ways to violate HOF's trademark rights. Attached as Exhibit N are true and accurate copies of pages from a search for the phrase "hearts on fire" made through the search engine Wisenut.com.

35. When the eighty-ninth entry in the search results is clicked, the user is temporarily presented with a page, under the caption "hearts on fire engagement rings." Attached as Exhibit O is a true and accurate copy of such page. This page purports to be a source of genuine Hearts On Fire® jewelry but, in fact, is not.

36. Furthermore, this page appears for merely a few seconds before it is replaced with another page under the caption "FREE Insider's Report" which purports to offer information about how to purchase jewelry at wholesale prices. Attached as Exhibit P is a true and accurate copy of such page.

37. When the links on this page are clicked, the user is presented with GoldenMine's web site. Attached as Exhibit Q is a true and accurate copy of the page presented to the user after clicking the links contained in Exhibit P. Thus, despite repeated warnings, GoldenMine is continuing to make unauthorized use of HOF's trademarks in an attempt to divert customers for GoldenMine's own benefit.

## COUNT I
## Trademark Infringement
## (15 U.S.C. § 1114(1))

38. HOF specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

39. HOF engages in interstate activities designed to promote the goods and services sold, as well as the good will associated with its trademarks, throughout the United States.

40. The marks Hearts On Fire®, Dream®, Dream Cut®, Dream By Hearts on Fire® are inherently distinctive and/or have acquired secondary meaning.

41. The marks Hearts On Fire®, Dream®, Dream Cut®, and Dream By Hearts On Fire® relating to HOF's diamond and jewelry business, have been, and will continue to be, known throughout the United States as identifying and distinguishing HOF's business.

42. Without authorization or the consent of HOF, GoldenMine has used, and continues to use, marks confusingly similar to the Hearts On Fire®, Dream®, Dream Cut®, and Dream By Hearts On Fire® marks. Further, GoldenMine sells, offers for sale, distributes, and advertises goods and services to the general public in competition with HOF's sales, distribution, and advertisement of genuine Hearts On Fire® diamonds and jewelry, in or affecting interstate commerce and provides information about diamonds in or affecting interstate commerce.

43. GoldenMine's use of the marks Hearts On Fire®, Dream®, Dream Cut®, and Dream By Hearts On Fire® and/or confusingly similar variants thereof for its goods and services is likely to cause, and is causing, confusion, mistake, and deception among the general public as to the origin of the goods and services, or as to whether GoldenMine is sponsored by, affiliated with, or otherwise connected with HOF in violation of 28 U.S.C. § 1114(1).

44. By using marks confusingly similar to the Hearts On Fire®, Dream®, Dream Cut®, and Dream By Hearts on Fire® marks, and by selling, offering for sale, distributing,

and/or advertising goods and services to the general public in connection with such marks and/or confusingly similar variants thereof, for profit and without HOF's authorization, GoldenMine is depriving HOF of its exclusive right to control, and benefit from, its trademarks. If permitted to continue, GoldenMine's actions will nullify HOF's right to the exclusive use of its marks, free from infringement, and will have a substantial and adverse effect on HOF's existing and projected future interstate business of marketing products and services identified by its trademarks.

45. HOF has been, and continues to be, damaged by GoldenMine's activities and conduct. GoldenMine has profited thereby and, unless its conduct is enjoined, HOF's reputation and good will will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, HOF is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

46. By using marks confusingly similar to the Hearts On Fire®, Dream®, Dream Cut®, and Dream By Hearts On Fire® marks, and by selling, offering for sale, distributing, and/or advertising goods and services to the general public in connection with such mark, GoldenMine has intentionally and knowingly used HOF's trademarks. Accordingly, HOF is entitled to a judgment of three times its damages and Defendants' ill-gotten profits, together with reasonable attorney's fees, pursuant to 15 U.S.C. § 1117(a).

### COUNT II
### Unfair Competition and False Designation of Origin
### (15 U.S.C. § 1125(a))

47. HOF specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

48. HOF engages in interstate activities designed to promote the goods and services sold, as well as the good will associated with its trademarks, throughout the United States.

49.    The marks Hearts On Fire®, Dream®, Dream™, Dream Cut®, and Dream By Hearts On Fire® are inherently distinctive and/or have acquired secondary meaning.

50.    The marks Hearts On Fire®, Dream®, Dream™, Dream Cut®, and Dream By Hearts On Fire®, relating to HOF's diamond and jewelry business, have been, and will continue to be, known throughout the United States as identifying and distinguishing HOF's business.

51.    By using designations confusingly similar to HOF's marks in connection with the sale, offering for sale, distribution, and/or advertising of goods and services to the general public, without HOF's authorization or consent, GoldenMine is falsely designating the origin of its goods or services and/or is falsely representing sponsorship by, affiliation with, or connection to, HOF and its goods and/or services in violation of 15 U.S.C. § 1125(a)(1).

52.    HOF has been, and continues to be, damaged by GoldenMine's activities and conduct. GoldenMine has profited therefrom and, unless its conduct is enjoined, HOF's reputation and good will will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, HOF seeks injunctive relief pursuant to 15 U.S.C. § 1116.

53.    GoldenMine has intentionally and knowingly used a designation confusingly similar to HOF's marks in connection with selling, offering for sale, distributing, and/or advertising goods and services to the general public. Accordingly, HOF is entitled to a judgment of three times its damages and GoldenMine's ill-gotten profits, together with reasonable attorney's fees, pursuant to 15 U.S.C. § 1117(a).

54.    GoldenMine is selling, offering for sale, distributing, and/or advertising goods and/or services to the general public using a designation confusingly similar to HOF's marks. Accordingly, HOF also seeks destruction of all infringing articles that contain such designation

pursuant to 15 U.S.C. § 1118.

## COUNT III
### Trademark Dilution
### (15 U.S.C. § 1125(c))

55. HOF specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

56. HOF engages in interstate activities designed to promote its goods and services, as well as the good will associated with its trademarks, throughout the United States.

57. As set forth herein, HOF's trademarks are distinctive, within the meaning of 15 U.S.C. § 1125(c)(1).

58. Through extensive use, sales, advertising, promotion, and continuity, HOF's trademarks have become famous, within the meaning of 15 U.S.C. § 1125(c)(1).

59. GoldenMine's use of HOF's trademarks and/or similar designations is dilutive of the distinctive value of HOF's marks within the meaning of 15 U.S.C. § 1125(c)(1).

60. GoldenMine's diluting actions entitle HOF to an injunction pursuant to 15 U.S.C. § 1125(c)(1).

61. By its bad faith diluting actions, GoldenMine is liable for profits, actual damages, and the costs of the action, pursuant to 17 U.S.C. § 1117(a).

62. Because its bad faith conduct is exceptional, the court may award attorneys' fees to HOF, pursuant to 15 U.S.C. § 1117(a).

## COUNT IV
### Unfair Competition
### (Common Law)

63. HOF specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

64. HOF has distinctive marks that are valid at common law, and that it uses in

connection with the sale, distribution, and advertising of its diamonds and jewelry.

65.  The marks Hearts On Fire®, Dream®, Dream™, Dream Cut®, and Dream By Hearts On Fire®, relating to HOF's diamond and jewelry business, have been, and will continue to be, known throughout the United States as identifying and distinguishing HOF's business.

66.  The marks Hearts On Fire®, Dream®, Dream Cut®, and Dream by Hearts on Fire® are inherently distinctive and/or have acquired secondary meaning.

67.  Without authorization or consent of HOF, GoldenMine has used, and continues to use, designations confusingly similar to HOF's marks in connection with the sale, offering for sale, distribution, and advertising of goods and/or services to the general public in competition with HOF.

68.  GoldenMine's use of confusingly similar designations to HOF's marks in connection with the sale, offering for sale, distribution, and/or advertising of goods and/or services is likely to cause confusion, mistake, and deception among the general public as to the origin of GoldenMine's goods and services and/or as to sponsorship by, affiliation with, and/or connection to HOF.

69.  GoldenMine has willfully, intentionally, and knowingly used a designation confusingly similar to HOF's marks in connection with the sale, offering for sale, distribution, and/or advertising of goods and/or services.

70.  By using a confusingly similar designation to HOF's marks, in connection with the sale, offering for sale, distribution, and/or advertising of goods and/or services to the general public, GoldenMine has wrongfully profited from its infringement of such marks. HOF has been, and continues to be, damaged by GoldenMine's conduct which has a substantial and adverse effect on HOF's good will and business identified by its trademarks. Furthermore,

GoldenMine's actions will have the effect of nullifying HOF's right to the exclusive use of its marks, free from infringement. HOF, therefore seeks actual damages as well as disgorgement of GoldenMine's profits from the use of such marks.

71. GoldenMine has profited thereby and, unless its conduct is enjoined, HOF's reputation and good will will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, HOF also seeks injunctive relief to restrain GoldenMine's use of marks confusingly similar to marks of HOF.

### COUNT V
### Unfair and Deceptive Acts and Practices
### (Mass. Gen. Laws ch. 93A, § 2)

72. HOF specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

73. HOF and GoldenMine are in the conduct of trade or commerce within the meaning of Mass. Gen. Laws ch. 93A.

74. The foregoing conduct by GoldenMine constitutes unfair or deceptive acts and practices within the meaning of Mass. Gen. Laws ch. 93A.

75. GoldenMine's unfair and deceptive business practices in the conduct of commercial business occur primarily and substantially in Massachusetts.

76. Through the unfair and deceptive acts and practices described herein, HOF has been, and continues to be, damaged by GoldenMine's activities and conduct. GoldenMine has profited thereby and, unless its conduct is enjoined, HOF's will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly HOF seeks injunctive relief pursuant to Mass. Gen. Laws ch. 93A, § 11.

15

HEARTS ON FIRE COMPANY, LLC

By its attorneys,

/s/ Mark D. Robins
_____
Robert P. Sherman, Esq. (BBO #548540)
Mark D. Robins, Esq. (BBO #559933)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
(617) 345-1000

Dated: July 26, 2004

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Hearts on Fire Company, LLC
99 Summer Street
Boston, MA 02110

(b) County of Residence of First Listed Plaintiff **Suffolk**
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

GoldenMine.com, Inc.
606 S. Hill Street, Suite 210
Los Angeles, CA 90014

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Robert P. Sherman
Mark D. Robins
Nixon Peabody LLC
100 Summer Street, Boston, MA 02110

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ ~~Medicare Act~~ | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | ☒ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | / ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | | | |
| | / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

The cause of action is for trademark infringement and related trademark violations (15 U.S.C. §§ 1114, 1125(a), (c)) to redress the unauthorized use of Plaintiff's trademarks.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE 7/26/04

SIGNATURE OF ATTORNEY OF RECORD /s/ Mark D. Robins

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Hearts on Fire Company, LLC v. GoldenMine.com, Inc.__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   - [ ] I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.
   - [X] II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.   *Also complete AO 120 or AO 121 for patent, trademark or copyright cases
   - [ ] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.
   - [ ] IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.
   - [ ] V.   150, 152, 153.

   *(stamp: 04-11650 PBS)*

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]   NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]   NO [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]   NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]   NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [X]   NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division [X]   Central Division [ ]   Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division [ ]   Central Division [ ]   Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Mark D. Robins__
ADDRESS __Nixon Peabody LLP, 100 Summer Street, Boston, MA  02110__
TELEPHONE NO. __(617) 345-1000__

(Coversheetlocal.wpd - 10/17/02)